Argued 17 March; decided 30 March, 1903.

### VOLP *v.* SAYLOR.

[71 Pac. 980.]

POWER OF MEDICAL BOARD TO GRANT TEMPORARY LICENSE.

1. A board of examiners authorized by law to issue a certificate to such persons as pass a satisfactory examination has no power to grant any certificate whatever to one who has failed in the examination, and any permit that it may issue is a nullity.

PHYSICIANS—CONSTRUCTION OF A TEMPORARY LICENSE.

2. The fact that a board of examiners, in issuing a temporary license, used the form of a regular license, which erroneously recited that plaintiff had passed a satisfactory examination before the board, and was thereby authorized to practice, and merely limited the duration of the license, did not constitute such license a regular unlimited license to practice.

POWER OF MEDICAL BOARD TO REVOKE A LICENSE WITHOUT NOTICE.

3. The requirement of the medical bill of 1895 (Laws 1895, pp. 61, 64, § 5), that a license to practice medicine can be revoked only for unprofessional or dishonorable conduct, does not control the board in vacating and annulling the record of a temporary license issued without authority, but refers only to the revocation of regular licenses.

NOTICE OF REVOCATION OF MEDICAL LICENSE.

4. Where a board of medical examiners without authority issued a temporary license to an applicant who was not successful in his examination, and such applicant changed the license by erasure so as to show himself to be a regularly licensed physician without limitation, such license could be properly revoked by the board of its own motion, without notice.

From Multnomah: MELVIN C. GEORGE, Judge.

This is a mandamus proceeding by Heinrich Volp against W. H. Saylor and others, composing the Board of Medical Examiners of the State of Oregon, to compel defendants to revoke an order canceling plaintiff's license to practice medicine.   On June 13, 1891, plaintiff applied to the state board of medical examiners for an examination as to his qualifications to receive a license to practice medicine and surgery within the state. His examination proving unsatisfactory, the board issued to

him what was intended to be a temporary license only, or a permit to practice for six months, in the following form:

"This certifies that Heinrich Volp, having passed a satisfactory examination in medicine and surgery before the Board of Examiners is hereby authorized under the provisions of the 'Act to regulate the practice of medicine in the State of Oregon,' passed by the legislature in February, 1889, to pursue the practice of medicine and surgery in this state under the conditions of the aforesaid act till December 13, 1891."

On the 30th of March, 1895, Volp presented this certificate, with the words and figures "till December 13, 1891," erased, to the secretary of the board, with an application to have it recorded, and his name entered upon the register of licensed physicians and surgeons, whereupon the secretary, not observing the erasure, and believing the certificate to have regularly authorized the applicant to practice without restriction, recorded it, and entered Volp's name upon the register. On July 2, 1895, Volp filed said defaced and altered certificate with the Clerk of the County Court of Multnomah County, and on July 7, 1897, had a certified copy of the same filed with the clerk of Harney County, meanwhile pursuing the practice of medicine, and pretending to be a regularly licensed physician and surgeon. On or about May 23, 1900, one W. L. Marsden made complaint to the board, charging Volp with having fraudulently caused the said certificate so changed to be recorded, and his name entered in the register, whereupon the board, after giving him notice through the mail, investigated the charge, and on January 4, 1901, made an order revoking the pretended license. Feeling himself aggrieved by this action, Volp instituted this proceeding by mandamus to require the board to revoke such order and reinstate him as a duly licensed physician and surgeon. Being unsuccessful in the circuit court, he has appealed to this court.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. James R. Stoddard.*

For respondents there was a brief over the names of *John Manning,* District Attorney, *Schuyler C. Spencer* and *Arthur C. Spencer,* with an oral argument by *Mr. S. C. Spencer.*

Mr. Justice Wolverton, after stating the facts, delivered the opinion of the court.

Plaintiff's counsel bases this appeal upon two contentions, the first being that the certificate issued by the board of medical examiners in effect licensed plaintiff to practice medicine and surgery without restriction; that, the board being without authority to issue a permit or a temporary license, and having certified that the licentiate had passed a satisfactory examination, and exercised its authority to license, it must be held to have exercised its powers legally, and to have granted a full license: and, the second, that the board was without jurisdiction to make the order revoking such license, because the licentiate was not regularly served with proper and legal notice of the pending procedings.

The Board of Examiners issuing the certificate in question was organized and acting in pursuance of an act of the legislative assembly of 1889 entitled "An act to regulate the practice of medicine and surgery in the State of Oregon": Laws 1889, p. 144. It was stipulated at the trial in the circuit court that this board had no power to issue a temporary permit or license. It appears from the testimony of the secretary, however, that it had adopted the practice of giving temporary permits, so that the applicant, if unsuccessful, could still earn a livelihood, with the understanding that he again submit himself for an examination at the expiration of the period fixed in the certificate. In compliance with this rule, the plaintiff did again submit to an examination, and, having again failed to come up to the requisite standard, received another certificate of like nature, granting him another extension of time in which to fit himself for a successful test of his qualifications. The act of 1889 was superseded by another, enacted at the 1895 session of the legislative assembly: Laws 1895, p. 61. By the last clause of section 3 of this latter act it is provided that all persons who have been regularly licensed under theretofore existing laws of the state, and have complied with the provisions thereof, shall be taken and considered as licensed physicians under this act, the secretary of the board being

required to enter the names of such persons upon the register kept by him as licensed physicians and surgeons, upon the written application of such persons, accompanied with such license theretofore regularly issued. By section 7 it is further enacted that the person receiving the license shall present the same, or a copy thereof, to the county clerk in and for the county where he resides, who shall file it, and enter a memorandum thereof, giving the date of such license, the name of the person to whom issued, and the date of such filing, in a book kept for that purpose; and, in case the person so licensed shall move into another county, he is required to procure from the clerk a certified copy of such license, and file the same with the county clerk in the county to which he shall remove.

With a view of availing himself of the provisions of this later act, the plaintiff presented the certificate in question, with the words "till December 13, 1891," erased (giving it the color and appearance of a certificate regularly issued), to the secretary of the board. Having secured its record, and the entry of his name upon the register kept by such secretary as a licensed physician and surgeon, he caused such license to be filed with the Clerk of the County Court of Multnomah County, where he then resided, and, having subsequently removed to Harney County, procured a certified copy thereof, and filed the same with the county clerk of that county. By this means the plaintiff procured a record to be made up which upon its face shows him to have been regularly licensed and authorized to practice medicine and surgery in Multnomah and Harney counties. The plaintiff frankly stated at the trial that he made the erasure because he believed that the board had no authority to put the words and figures erased into the certificate, and that he had a perfect right to remove them, thus admitting, in effect, that he practiced a deception upon the secretary of the board of examiners in getting him to put on record a false certificate, or one that the board under the previous law refused to issue to him because his examination disclosed that he was not entitled to it.

1. This brings us squarely to the legal issue presented by

plaintiff's first contention. The counsel's reasoning is this: "The answer admits that the license delivered to plaintiff was an ordinary license, except that it was limited to six months, and that for that period it was valid. On the trial it was stipulated that the board had no power to limit the license. Therefore, under the pleadings, the license is valid." The vice of this crude syllogism is that the conclusion does not follow from the premises. Because the board of examiners adopted an irregular and unauthorized practice, and issued a permit or license, using the form of a regular certificate, but limiting its duration, it does not follow that such board issued and delivered to plaintiff an ordinary or regular license, unlimited in its scope, and therefore valid. The simple solution is that the board exceeded its authority in issuing the form of license adopted. It had no intention of issuing a regular license. The applicant had not come up to the prescribed standard under his examination, and, acting upon a generous impulse toward him, so that he might yet have an opportunity of qualifying himself, and in the mean while engage in his adopted profession, the board gave him the permit to practice for six months. Now, to construe such an act into absolute regularity, and the permit of six months' duration into a license regular in form and unrestricted as to the time of its operation, would be to contort an irregular and void proceeding into one of due regularity and perfect legal efficacy. The board never issued such a license to the plaintiff as he now professes to have obtained, and his erasure of that portion of the certificate intended as a limitation cannot, by any rule of ethics or practice, either in law or morals, operate to admit him as a regular practitioner of medicine and surgery; so that he has never been by any act of the board licensed generally to practice his profession, but by his own willful act he has procured the making up of a record which is false, and without the power of either the board or its clerk to make—one that upon its face shows him to be a regularly licensed physician and surgeon.

2. The fact that it is certified that Volp passed a satisfactory examination cannot aid him, as the certificate by its very terms

limited the time the board intended he should exercise the privilege accorded, and the suggestion that the board is precluded from showing that the examination was unsatisfactory is without relevancy in the argument.   It was wholly unnecessary that this should be done, as the board did not see fit to grant the full license, notwithstanding it certified that the examination was satisfactory.   Plaintiff may have been entitled to a full license upon such a showing, but he did not get it, and his act of changing the certificate received could not operate as an act of the board granting that which he applied for.

3. In this connection it is further insisted that plaintiff's license could not be revoked except for unprofessional or dishonorable conduct, and that the act of plaintiff in changing the certificate, and thus procuring his name to be entered in the register, does not come within the meaning of such terms as declared by the act of 1895.   This proceeds upon the assumption that the plaintiff was regularly licensed, and that he was then entitled to practice by reason thereof.   But plaintiff had no such license to revoke.   The record he caused to be made up gave him none, but it falsely showed that one had been regularly issued to him, and it was to get rid of this record that the board took action.   What the board really did was to vacate a void record.

4. This brings us to counsel's second contention—that plaintiff could not be deprived of his license without notice, and an opportunity to be heard, and that he was not regularly or legally notified of the pending proceeding to deprive him of his certificate.   Now, a void decree, judgment, or order of a court of record entered without jurisdiction of the person or authority of law, when it so appears upon its face, may be vacated at any time by virtue of the power inherent in the court, and even upon its own motion: *Ladd* v. *Mason,* 10 Or. 308; *White* v. *Ladd,* 41 Or. 324 (68 Pac. 739).   The rule could hardly be less authoritative in case of a board whose functions are quasi judicial; so that, where the record is admittedly fraudulent, as it is here, a court of justice will not intercede to reinstate it, even though it was vacated without notice to the party affected

by the order. If the court could see that plaintiff had been deprived of any substantial right without an opportunity to be heard, the case would be different; but he is insisting upon a privilege vouchsafed to him by a license or record which he concedes to have been obtained through his own willful and fraudulent act, and the court will not thus intercede to permit him to enjoy the fruits of his own wrong. So that neither of the contentions of counsel is adequate to overturn the judgment of the trial court, and it will therefore be affirmed.

AFFIRMED.

Decided 27 April, 1903.